IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| VERISIGN, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> XYZ.COM, LLC <br><br> -and- <br><br> DANIEL NEGARI <br><br><br> *Defendants*. | Case No. 3:15-mc-0019-TJC-JBT <br><br> Underlying Litigation: <br> **Case No. 1:14-cv-0179-CMH-MSN** <br> United States District Court <br> Eastern District of Virginia |

**OPPOSITION OF NON-PARTY WITNESSES WEB.COM GROUP, INC. AND NETWORK SOLUTIONS, LLC TO VERISIGN, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26, 37, and 45 of the Federal Rules of Civil Procedure, and Local Rule 3.01, non-party witnesses Web.com Group, Inc. and Network Solutions, LLC (collectively referred to herein as "Web.com"), by and through undersigned counsel, respectfully oppose Verisign, Inc.'s motion to compel an expedited production of thousands of documents in connection with its pending litigation in the Eastern District of Virginia.

### INTRODUCTION

Non-party witness Web.com Group, Inc. is a Delaware Corporation, headquartered in Jacksonville, Florida, which offers certain services related to domain name registration and website hosting. Declaration of Linda Shutterly in Supp. of Web.com's Opp. to Mot. to Compel, dated July 2, 2015 ("Shutterly Dec."), ¶ 3. Web.com Group, Inc. owns and operates several domain name registrars and has preexisting business relationships with both parties in the

underlying litigation.

In February 2014, Web.com Group, Inc., through its wholly owned subsidiary Network Solutions, LLC, also a non-party witness, entered into a Registry-Registrar Agreement with XYZ.com, LLC ("XYZ"), pursuant to which Web.com agreed to act as a registrar for certain domain names offered by XYZ. Shutterly Dec. at ¶ 4. The parties also entered into ancillary agreements, all of which have already been produced. *Id.*

The underlying litigation appears to be a simple false advertising complaint. Web.com, although a third party, has existing and past business relationships with Verisign, and has understandable concerns that the discovery process could be used to pry into sensitive business relationships. Web.com is also understandably concerned about the substantial cost, burden, and disruption involved in responding to the subpoena. Even as narrowed by agreement, to comply with the subpoena, Web.com would be forced to review over 6,500 documents, very few of which are likely to be relevant to the narrow dispute at issue in the underlying litigation. Nonetheless, Verisign has refused to share in any cost of conducting an expedited review, belying its claims of urgency.

**RELEVANT BACKGROUND**

On March 31, 2015, Verisign, Inc. ("Verisign") served a subpoena to produce documents on non-party Web.com in connection with its claim against XYZ and Daniel Negari for deceptive advertising and unfair trade practices. Shutterly Dec. at ¶ 7. On April 14, 2015, Web.com served its response and objections to Verisign's subpoena, and the parties met and conferred during the period from April 17, 2015 through May 5, 2015, in an effort to reach an agreement on the relevant search terms and the scope of the document production. *See* Declaration of Jason Koral in Supp. of Web.com's Opp. to Mot. to Compel, dated July 7, 2015 ("Koral Dec."), ¶ 2.

On May 5, 2015, after several weeks of negotiation, counsel for Web.com proposed to Verisign that Web.com search for and produce documents from all relevant custodians from the period of January 1, 2012 through March 31, 2015 based on certain agreed upon search terms. *Id*. at ¶ 4. Additionally, counsel for Web.com explained that it was not feasible to identify and produce all communications between Web.com and each of the thousands of alleged XYZ registrants, as called for by Request 19 of the subpoena. *Id*. at ¶ 3. Nevertheless, Web.com agreed to provide Verisign with a copy of the standardized email that was sent to all alleged XYZ registrants and identify the total number of registrants at issue. *Id*.

Verisign did not respond until the afternoon of May 22, 2015, the Friday before a national holiday and over two weeks after receiving Web.com's proposal to produce responsive documents. Although Verisign stated that the proposal "addressed many of [its] concerns," it nevertheless responded with a counter-proposal and several additional requests. After returning from the holiday weekend, Web.com arranged a call with its counsel to discuss Verisign's additional requests, but on Wednesday, May 27, 2015, before Web.com had an opportunity to respond, Verisign sent an email notifying Web.com that it needed to start receiving documents "ASAP" and requesting an "unequivocal" response that Web.com would begin production that afternoon and "complete production by early [the] next week." *Id*. at ¶ 7. While Web.com could not respond unequivocally that it would begin producing documents within a matter of hours, when the parties had yet to reach an agreement about the scope of the subpoena, it nevertheless responded that it understood Verisign's concerns about timing. *Id*. Web.com has subsequently produced copies of all documents responsive to Requests 3-9 of the subpoena, the requests on which the parties reached agreement. *Id*. at ¶ 8.

Following Verisign's May 27 email, the parties continued to meet and confer and on June

25, 2015, they reached an agreement on the applicable search terms. *Id*. at ¶ 12. Web.com proceeded to search for documents containing the agreed upon terms and identified over 6,500 potentially responsive emails. Shutterly Dec. at ¶ 8.

## ARGUMENT

I.  **The Scope of the Subpoena is Overbroad, Unduly Burdensome, and Unlikely to Lead to Information Relevant to the Underlying Litigation**

Under Federal Rule of Civil Procedure 26(b), "[p]arties may obtain discovery of any matter, not privileged, which is *relevant to the subject matter involved in the pending action*." *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003) (quoting Fed. R. Civ. P. 26(b)) (emphasis added). The underlying litigation in this case consists of a single claim against XYZ for deceptive advertising and unfair trade practices. Verisign has alleged that XYZ and Daniel Negari made false and misleading statements when they represented that XYZ had "447,544 domain names registered as of August [2014]". Pl.'s Mot. to Compel at 3. The crux of Verisign's liability case as understood by Web.com is to question XYZ's representations concerning these registrations, based on the allegation that the registrations occurred automatically, without a specific affirmative action by the registrant.

As Verisign acknowledges in its motion to compel, the only relevance of Web.com in this case relates to its participation in the Registry-Registrar Agreement and the related agreements. *See id*. at 3-5. Verisign has not alleged that Web.com has participated in any false advertising in connection with the domain name registration program, nor has it alleged that Web.com has made any false or misleading statements regarding XYZ's penetration into the domain name market. Nevertheless, Verisign's subpoena called for 21 broad categories of documents, including Web.com's agreements and confidential business communications with other non-

4

parties, as well as all email communications with the "hundreds of thousands" of individual XYZ registrants, all of which are preexisting Web.com customers. *Id.* at 3; Shutterly Dec. at ¶ 5.

These requests go far beyond what is necessary to determine the only relevant facts pertinent to Web.com: the nature of the domain name registration program (*i.e.*, to what degree it involved volitional conduct by registrants), and the volume of registrations implemented under the program. That is the only information relevant to the allegations that defendants misrepresented the scope and the nature of XYZ's penetration into the domain name market.

Significantly, Web.com has already provided Verisign copies of all agreements between the parties, including the Registry-Registrar Agreement between Web.com and XYZ, and has agreed to provide the total number of persons who received an XYZ domain name under the program. That material alone is more than sufficient for Verisign's legitimate discovery purposes, particularly since Verisign itself has previously entered into similar agreements with Web.com for domain name registration, and thus is familiar with their mechanics. *See* Shutterly Dec. at ¶ 6. Furthermore, Web.com has also agreed to provide a witness for deposition to explain its agreements with XYZ, should Verisign require additional information regarding the structure of the domain name registration program. Koral Dec. at ¶ 11.

Additionally, given its preexisting business relationships with both Verisign and XYZ, Web.com has a very real concern about the breadth of documents called for under the subpoena. Indeed, on June 24, 2015, counsel for Web.com expressed this precise concern to Verisign in response to its request that Web.com produce potentially responsive documents without conducting a review for confidential or privileged information. As counsel for Web.com explained, Verisign's document requests are so broad that they would very likely capture documents that contain information related to Web.com's prior and existing business

relationships with the parties. *See id*. at ¶ 10. This confidential and potentially competitive business information bears no relationship to Verisign's false advertising claim against XYZ, and Verisign may not use an overbroad subpoena as a mechanism to discover documents that it is not entitle to receive. *See* Fed. R. Civ. P. 45(d)(3)(B) (courts may modify or quash a subpoena when it requires "disclosing a trade secret or other confidential research, development or commercial information . . . .").

Accordingly, Web.com should not be compelled to produce thousands of additional documents that are irrelevant to the underlying litigation and likely contain confidential and competitive information regarding its preexisting business relationships with the defendant and other non-parties.

II.     **Complying with the Subpoena as Written Would be Unduly Burdensome and Verisign has Refused to Assume the Cost of Reviewing and Producing the Thousands of Documents it Seeks**

Verisign has alleged that "hundreds of thousands" of registrants of .COM domain names were caused to take .XYZ domain names under the domain name registration program. To search for all communications to and from each of these alleged registrants would place a tremendous and unreasonable burden on Web.com, which is merely a non-party witness in the underlying litigation. *See Am. Airlines, Inc. v. In Charge Mktg., Inc.*, No. 2:10-CV-00467-JES, 2012 WL 2116349, at *2 (M.D. Fla. 2012) ("With regard to the burden imposed on non-parties in responding to discovery requests, courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request.").

Further, as counsel for Web.com has explained to Verisign, a preliminary search based on the previously agreed upon search terms for the relevant custodians has resulted in over 6,500

6

emails. Shutterly Dec. at ¶ 8. Verisign now insists that Web.com—a non-party to the underlying litigation—review these emails on an expedited basis. To place the burden of conducting an expedited review of thousands of documents and preparing voluminous document productions on a non-party witness is wholly unreasonable, especially where those documents are likely irrelevant to the underlying litigation. *See Cytodyne Tech.*, 216 F.R.D. at 535 ("Although Rule 26(b) applies to discovery of non-parties as well as parties in suit, non-party status is considered by court in weighing burdens imposed in providing the requested discovery.") (internal citations omitted); *Solarex Corp. v Acro Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (non-party status is a significant factor in determining whether discovery is unduly burdensome). Notwithstanding the burden it will impose, Web.com has in fact agreed to review the over 6,500 documents and provide Verisign with all non-privileged documents that are responsive under the subpoena.

On June 23, 2015, counsel for Web.com notified Verisign of the volume of documents and offered two possible courses of action. Koral Dec. at ¶ 9. First, Web.com offered to bear the burden of reviewing the documents and producing all responsive, non-privileged documents on a rolling basis beginning immediately and concluding prior to the discovery deadline in the underlying litigation. *Id*. Under this option, Web.com would utilize its available internal resources to conduct the review. *Id*. Alternatively, Web.com offered to hire additional third-party resources to effectuate an expedited review, which would allow Verisign to receive the documents more quickly. *Id*. However, an outside review of 6,500 emails would cost over $6,000, and the final cost would likely be even greater after accounting for any documents attached to those emails. *See id.* at ¶ 13. Therefore, Web.com's only request was that Verisign assume the cost of conducting the outside review, but Verisign declined to do so. *Id*. ¶ 9.

7

Accordingly, if time is truly of the essence, then Verisign has an option available for receiving all responsive documents expeditiously. But to compel Web.com to shoulder the burden and expense of conducting an expedited review and production that Verisign itself is unwilling to pay for is unfair and unreasonable and places an undue burden on Web.com as a non-party witness.

## CONCLUSION

For the foregoing reasons, Web.com respectfully requests that Verisign's Motion to Compel be denied.

Dated: July 6, 2014

Respectfully Submitted,

By: /s/ Christian E. Dodd
Christian E. Dodd
Florida Bar No.: 0093404
Hickey Smith LLP
10752 Deerwood Park Blvd., Suite 100
Jacksonville, FL  32256
Telephone: (904) 374-4238
Facsimile: (904) 374-4238
Email: cdodd@hickeysmith.com

-and-

Jason Koral (*pro hac vice pending*)
Kiva G. Schrager (*pro hac vice pending*)
Cooley LLP
1114 Avenue of the Americas
New York, NY  10036
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
Email: jkoral@cooley.com

*Attorneys for Web.com Group, Inc. and Network Solutions, LLC*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 6, 2015, I sent a copy of the foregoing, along with the supporting declarations cited therein, to the following via first-class mail and electronic mail:

J. Douglas Baldridge
Venable LLP
575 7th Street, NW
Washington, DC 20004
Email: jdbaldridge@venable.com

Randall K. Miller
Nicholas M. DePalma
Kevin W. Weigand
Venable LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, VA 22182
Email: rkmiller@venable.com
Email: nmdepalma@venable.com
kwweigand@venable.com

Counsel for Plaintiff VeriSign, Inc.

Timothy J. Battle
524 King Street
Alexandria, VA 22320-4593
Email: tjbattle@verizon.net

Derek A. Newman
Newman Du Wors, LLP
100 Wilshire Blvd., Suite 940
Santa Monica, CA 90401
Email: dn@newmanlaw.com

Counsel for Defendants XYX.COM, LLC and Daniel Negari

/s/ Christian E. Dodd
Christian E. Dodd
Florida Bar No.: 0093404